The opinion of the Court was delivered by
Mr. Justice Colcock.
By the act of 1740, negroes are declared to'be absolute slaves, and considered in the light of chattels personal in the hands of their owners or possessors, and the 34th section declares, “ that it shall not be lawful for any slave to buy, (that is, for his peculiar benefit,) sell, trade, traffic, deal, or barter, for any goods or commodities, (with some exceptions, which relate to his being hired out by his master, who is to receive the whole of his wages,) nor shall any slave be per *332 mitted to keep any property except such as is _ r J r r J r therein specified,” and it includes any species of property which they would probably be able to r r # J * * J the possession of, under the pain of the same being seized and forfeited for public uses. The first constituent in a contract, is persons who are capable in law of contracting. By these acts it appears that the negro is deprived of all civil rights, and it is declared to be unlawful for him to make contracts. It follows, of course, that the contract on which this action is founded is ipso facto void, being made by one who is incapable in law to contract. But we have been referred to the civil law, which it is said contains principles which ought to be adopted here, the state of slavery being the same in both countries. I am aware that at one period in the history of Rome the most abject state of slavery existed, and that the slaves of that day were considered as chattels, and that whatever they acquired was their master’s, except their pcculimn. But when it is said that whatever they acquire became their master’s, it is meant whatever they absolutely acquired by gratuity, &c. of others; and so I should hold in relation to our slaves. But it does not follow from thence that the master could sue in his own name, to compel the performance of an executory contract. On, the contrary, it is said, “ they could not plead or be impleaded, for they were excluded from all civil concerns whatever.” (Cooper's Justinian, 416, *333 in the notes.), If a contract entered into by a slave, in his own name, for his own benefit, could be considered as a valid contract, yet, as there is no law which expressly declares that it shall enure to the benefit of the master, I cannot conceive that the action could be maintained by the master, for there is, and can be, no privity between the plaintiff and defendant. The slave cannot endorse the note, nor can he empower his master to sue for him.
Such is the law, and, ás I conceive, founded in the wisest principles of policy. If it were permitted for slaves to enter into contracts, and masters to compel the performance of them, incalculable evils would result.
It cannot be necessary to say any thing about the permission granted to persons to deal with slaves who have tickets from their masters permitting such dealings; for such a case would be wholly different from this. There the contract would be considered as made with ■ the master, through the medium of the slave.
I am against the motion.
GrimTcé, JYott, Johnson, and Gantt, J. concurred.
Cheves, J. dissented.